UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBERT STEVEN ROBERTS and        )
RETHIA MARIE ROBERTS,            )
                                 )
        Plaintiffs,              )
                                 )
v.                               )    No.: 3:12-CV-495-PLR-HBG
                                 )
WAL-MART STORES, INC.,           )
WAL-MART STORES EAST, LP,        )
WAL-MART ASSOCIATES, INC.,       )
WAL-MART REAL ESTATE BUSINESS    )
TRUST, INC., and                 )
THE CITY OF MARYVILLE, TENNESSEE, )
                                 )
        Defendants.              )

**MEMORANDUM OPINION**

Plaintiffs have brought this § 1983 action against Defendants to recover for injuries allegedly sustained on September 20, 2011, when Mr. Roberts was suspected of carrying a bomb in a Wal-Mart store, and briefly detained by law enforcement. Currently pending before the court are Defendants' motions for summary judgment. The court has carefully considered the pending motions and the supporting exhibits in light of the applicable law. For the reasons stated herein, the court finds Defendants' motions for summary judgment well-taken, and the motions will be **GRANTED.**

# I. Procedural Background

Plaintiffs filed their complaint in this action on September 19, 2012, and Defendants timely filed responses to the complaint. After completion of discovery, the Wal-Mart defendants filed a motion for summary judgment on March 21, 2014. The City of Maryville filed its motion for summary judgment on March 24, 2014. Pursuant to Local Rule 7.1, Plaintiffs' response to the motions was due 21 days thereafter. Plaintiffs failed to respond to the summary judgment motions and on April 25, 2014, the court entered an order requiring plaintiffs to show cause, in writing, why defendants' motions for summary judgment should not be granted by the court and this action dismissed. No response was received to the show cause order. Accordingly, pursuant to Local Rule 7.2, the Court will deem Plaintiffs' failure to respond to the motions and the Court's order of April 25, 2014 as a waiver of any opposition to the relief sought by Defendants in this case.

# II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*

*Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. Factual Background

On September 20, 2011, plaintiffs went to the Wal-Mart Supercenter located at Highway 411 in Maryville, Tennessee. Upon arriving at the store, plaintiffs entered

3

through the garden center, and soon thereafter, separated from one another to conduct their shopping.

Mr. Roberts encountered a Wal-Mart sales associate, Joshua Spillers. Spillers asked Mr. Roberts if there was anything he could help him with. Spillers understood Mr. Roberts to say, "No, I'm just walking around with a bomb somewhere." Mr. Roberts then walked away from Spillers. Spillers was shocked by this response. Spillers testified in his deposition that he was absolutely sure that he heard Mr. Roberts say he had "a bomb somewhere."

Spillers reported the threat to his supervisor, Bill Freeman, who in turn, reported it to the store manager, Melvin Covington. Several employees attempted to find Mr. Roberts by walking around the store, but they were unable to locate him. When Wal-Mart management was unable to locate Mr. Roberts on store video surveillance, management decided to evacuate the store, and through the broadcast system, requested that all customers and employees exit the building. Wal-Mart management then contacted the City of Maryville through the 911 dispatch. J.D. Hardiman, assistant store manager, spoke with the 911 dispatcher and reported that one of the store's customers stated he was walking around with a bomb somewhere, and that store management had lost sight of the customer. Hardiman gave the 911 dispatcher a description of Mr. Roberts. The dispatcher said she would send officers to the store.

Police officers from the Maryville Police Department arrived as customers were exiting the store. Mr. Roberts was identified by a member of Wal-Mart management, and the officers detained Mr. Roberts while they conducted their investigation.

4

An officer interviewed Spillers, who confirmed the alleged bomb threat by Mr. Roberts. The officer next interviewed Mrs. Roberts. Mrs. Roberts explained that they had been to the Veterans Administration facilities in Knoxville that morning for treatment of Mr. Roberts' post-traumatic stress disorder, and that Mr. Roberts had been taking medications for this condition for a number of years. Mrs. Roberts further explained that Mr. Roberts was a "bit down" right now regarding something going on with his son, and he probably said he was "bummed out" and was misunderstood.

A member of Wal-Mart management reported to the investigating officer that store video had been reviewed, and Mr. Roberts was not seen carrying anything into the store, or carrying anything while in the store. Mr. Roberts was then interviewed. The officer asked him about his medical history, and he advised the officer that he suffered from post-traumatic stress disorder and was taking medications for it. Mr. Roberts further told the officer that he battles depression and has had thoughts of hurting himself in the past, but he didn't have any thoughts like that on that day, and felt fine except for being upset and embarrassed about what was going on. Finally, the Wal-Mart surveillance video from the store was reviewed by the officers. After conferring with Wal-Mart management, interviewing Spillers, reviewing security footage of Mr. Roberts inside Wal-Mart, and interviewing Mr. Roberts, he was released by the officers. No criminal charges were placed against Mr. Roberts.

A surveillance camera from the Wal-Mart parking lot captured officers' interaction with plaintiffs. Defendants also submitted deposition testimony from Mr. and Mrs. Roberts, Officer Rodrigo Fernandez, and Joshua Spillers. The video shows officers

5

escorting Mr. Roberts to the trunk area of a patrol car, where a pat down search was performed. Mrs. Roberts appears on camera, and an officer is shown pointing his finger at Mrs. Roberts, who then walks away. Mr. Roberts was handcuffed and placed in the back of a patrol car. The door to the patrol car was closed. After several minutes, an officer checked on Mr. Roberts and asked him if he needed medical attention. Mr. Roberts responded that he was a diabetic and he was having an anxiety attack. The officer called for an EMT. During this time, the officers repositioned the handcuffs on Mr. Roberts in front of his body. Mr. Roberts was later examined by an EMT. Mrs. Roberts again approached the patrol car and was allowed to talk to Mr. Roberts. The video shows the officers continuing their investigation. Mr. Roberts is released approximately 35 minutes after his initial detention by the officers.

Mrs. Roberts alleges that an officer pointed a taser at her during the incident. The video, however, shows an officer pointing his finger at her. Mrs. Roberts admitted in her deposition that she was instructed three (3) times to step away from the scene before she complied with the officer's command. She also admitted in her deposition that she consented to a search of her purse and vehicle by the police officers during their investigation. Mrs. Roberts was never charged with any crime, never handcuffed, and never detained by being placed in a patrol car at any time during the investigation.

### IV. Analysis

Plaintiffs have brought this action against defendants pursuant to 42 U.S.C. § 1983. Section 1983 states in pertinent part:

6

Every person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, "while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entertainment LLC,* 428 F.3d 629, 636 (6th Cir. 2005). To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the plaintiff was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *Gardenhire v. Shelby County,* 205 F.3d 303, 310 (6th Cir. 2000).

## A. Claims against the City of Maryville

Plaintiffs' allegations regarding the City of Maryville, as stated in their Complaint, are as follows:

34.     Plaintiff Rethia Marie Roberts, as a result of the events which occurred on September 20, 2011, suffered from great fright, shock, humiliation and embarrassment as a result of watching her husband be abruptly arrested for no conceivable reason. As a result of being threatened with a taser by an officer of the City of Maryville, Plaintiff Rethia Marie Roberts was placed in fear for her personal safety when she did not pose any threat of harm to any officer or other person present.

35.     Plaintiff Robert Steven Roberts was placed under arrest by police officers employed by the City of Maryville. This arrest was made without a warrant.

7

36.     The Defendants did not have sufficient cause to place Plaintiff Robert Steven Roberts under arrest as this Plaintiff had not committed an offense or breach of the peace in their presence, and there was not a reasonable or justifiable cause to believe this plaintiff had, in fact, committed a felony.

37.  Defendant City of Maryville is responsible for the conduct of its police officers.

38.     Defendant City of Maryville is responsible for properly training and supervising its police officers with regard to procedures to be used in making an arrest was well as the appropriate amount of force to be exercised in effectuating an arrest.

39.     Defendant City of Maryville did not properly train and/or supervise its law enforcement officers to insure that the civil rights and liberties of Plaintiff Robert Steven Roberts were not violated while in the process of making an arrest and/or while detaining him as a suspect.

40.     Defendant City of Maryville also failed to properly train and/or supervise its officers in the use of potentially deadly force as to when to threaten its use against Plaintiff Rethia Roberts.

## 1.  Unreasonable Seizure

The undisputed facts of this case show that the detention of Mr. Roberts was reasonable as a matter of law.  Under *Terry v. Ohio,* a police officer may conduct an investigatory stop if he "has reasonable, articulable suspicion that the person has been, or is about to be engaged in criminal activity."  *Terry*, 392 U.S. 1, 26 (1968).  A *Terry* stop "must be based on specific, objective facts," and requires that the detaining officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *United States v. Cortez,* 449 U.S. 411, 417-18 (1981).

Here, the City of Maryville Police Department was alerted to a bomb threat at the Wal-Mart store and police were dispatched immediately thereafter.    Wal-Mart

8

management identified Mr. Roberts as the person who allegedly made the threat. Mr. Roberts was detained by officers, patted-down for weapons, and placed inside the patrol car while the investigation took place. As part of the investigation, Wal-Mart employees were interviewed, video from Wal-Mart surveillance cameras was reviewed, Mr. and Mrs. Roberts were interviewed, and Mr. Roberts was ultimately released. No charges were filed against Mr. Roberts. Mr. Roberts was only detained for approximately 35 minutes, during which the officers conducted their investigation. Based on these facts, the court cannot find that Mr. Roberts' Fourth Amendment right to be free from unlawful seizure was violated in this case. The length of his detention was reasonably related to the officers' investigation into the alleged bomb threat. The officers diligently pursued their investigation and immediately released Mr. Roberts upon concluding the investigation. No Fourth Amendment violation occurred.

As to Mrs. Roberts, the undisputed facts show that she was never arrested, charged, detained by being placed in a patrol car, or handcuffed at any time. Mrs. Roberts interjected herself into the investigation by disobeying the orders of the officers to stop approaching the patrol car where her husband was being temporarily detained. Even if she was asked by an officer not to leave the scene during the investigation, such an act would be reasonable under the circumstances given her proximity and relationship to Mr. Roberts. Therefore, to the extent that Mrs. Roberts alleges she was unlawfully seized by officers of the City of Maryville Police Department, her claim fails as a matter of law as she was never detained by the officers.

9

## 2. Excessive Force

Plaintiffs' complaint alleges that the officers used excessive force in the process of "applying the handcuffs," after Mr. Roberts advised the officers that "he had shoulder problems."

"A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). To show objective unreasonableness with respect to handcuffing, Sixth Circuit precedent "requires that a plaintiff show both that officers handcuffed the plaintiff excessively and unnecessarily tightly, and that officers ignored the plaintiff's pleas that the handcuffs were too tight." *Vance v. Wade,* 546 F.3d 774, 783 (6th Cir. 2008). However, the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical force, coercion, or threat thereof to effect it. *Graham,* 490 U.S. at 396.

Here, the surveillance video demonstrates that no excessive force was used in the initial handcuffing of Mr. Roberts and placing him in the patrol car. Several minutes later, an officer returned to check on him. Mr. Roberts told the officer that he was diabetic and his heart was racing. He further stated that he was in a contorted position and was suffering. In response, the officers repositioned the handcuffs in front of Mr. Roberts, and called an EMT to the scene. Mr. Roberts testified in his deposition that "these officers were doing their job. I realize that . . . when I explained to him about the shoulder, then they re-cuffed me. They let me sit in the cruiser with my feet outside and door open . . . and the EMT attended to me, took my blood pressure, did the blood sugar

10

stick and things [like] that . . . ." Nothing in these events demonstrates excessive force. Based on the record, the court finds Plaintiffs have failed to present any facts supporting their claim that excessive force was used in handcuffing Mr. Roberts. Accordingly, summary judgment will be granted to the City of Maryville on Mr. Roberts' excessive force claim.

As to Mrs. Roberts' claim that an officer used excessive force by pointing a taser at her, the video demonstrates that the officer merely pointed his hand or finger at her instructing her to move away. Mrs. Roberts admitted in her deposition that this was in response to the officer ordering her three (3) different times to leave, which she disobeyed. Accordingly, the court finds that plaintiffs have failed to submit any material evidence in support of their claim of excessive force as to Mrs. Roberts, and summary judgment will be granted to the City of Maryville on the excessive force claims.

### 3.  Municipal Liability

The undisputed facts of this case fail to show that the plaintiffs' constitutional rights were violated by any of the officers on the scene. Mr. Roberts was never arrested; the video demonstrates no excessive force was used against Mr. Roberts; and Mr. Roberts admitted in his deposition that the officers were courteous during his brief detention. Any allegations by plaintiffs of failure to train or supervise in this case are moot because excessive force was not used as a matter of law as it relates to either of the plaintiffs, and the officers' investigation and brief detention of Mr. Roberts in this case was reasonable as a matter of law. Because no underlying constitutional right was violated, there can be no liability as it relates to the City of Maryville. The Sixth Circuit has held that if there is

11

no underlying constitutional tort, any allegations of failure to train and supervise are moot and do not state a cause of action for which relief may be granted. *See Hancock v. Dodson,* 958 F.2d 1367, 1376 (6th Cir. 2002).

## B.  Claims against Wal-Mart Defendants

Plaintiffs' allegations regarding the Wal-Mart defendants, as stated in their Complaint, are as follows:

> 19.    The information communicated to the City of Maryville was that Plaintiff Robert Steven Roberts had placed or was carrying a bomb in the store.
>
> 20.    At this point, Wal-Mart was acting under color of state law by requesting that the City of Maryville place Plaintiff Robert Steven Roberts under arrest.
>
> 21.    Probable cause did not exist for Wal-Mart, through its agent, servants and employees, to request the City of Maryville to arrest Plaintiff Robert Steven Roberts.
>
> 22.    During this period of time, the Plaintiffs had located one another and were walking in the direction of the check-out area when they heard the announcement for all persons to leave the store due a planned power shut down.  As they were making their way toward the exit, they were greeted by a Wal-Mart employee who walked with them outside of the store.
>
> 23.    Once Plaintiffs exited the building, the Wal-Mart employee with them motioned to law enforcement officers of the City of Maryville regarding Plaintiff Robert Steven Roberts.

Plaintiffs have produced no evidence that Wal-Mart violated their Fourth Amendment rights.  The extent of Mr. Roberts' interaction with Wal-Mart associates on September 20, 2011 included:  an associate asking Mr. Roberts if he needed any help; management announcing that all customers and associates needed to leave the building; a

sales associate escorting the Roberts along with other customers out of the building; and a Wal-Mart employee indicating to a police officer that Mr. Roberts was the customer who made the statement about having a bomb.

As for plaintiffs' claims that Wal-Mart management requested police officers to arrest Mr. Roberts, the recording of the 911 call demonstrates that Hardiman stated that he wanted an officer to "come out" or "come by" the store. No one from Wal-Mart asked anyone from the City of Maryville to place Mr. Roberts under arrest, and in fact, Mr. Roberts was not arrested. The court finds plaintiffs' allegations that Wal-Mart caused Mr. Roberts to be arrested are without merit.

Plaintiffs have also alleged that Wal-Mart participated in a civil conspiracy to violate their civil rights. A civil conspiracy claim under § 1983 lies where there is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir. 2007). To prevail on such a claim in this context, plaintiffs must demonstrate "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy that caused the injury. *Id.* It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Guierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987) (affirming grant of summary judgment where plaintiff's allegations lacked the requisite material facts and specificity necessary to sustain a conspiracy claim).

13

Based on the record in this case, the court finds that Wal-Mart management acted to maintain the safety of its customers and to ensure that there was no bomb in the store. They made a reasonable effort to find Mr. Roberts in the store and could not locate him. They then contacted the police. Under these circumstances, the court cannot find that Wal-Mart's action of calling police dispatch was unreasonable or an overt act designed to deprive Mr. Roberts of his civil rights.

Moreover, plaintiffs have failed to produce any evidence that Wal-Mart management and the City of Maryville police officers shared a single plan and a common objective to deprive them of their constitutional rights, and plaintiffs have failed to prove that any of their constitutional rights were violated. Based on these facts, no reasonable jury could find that Wal-Mart employees violated any of the plaintiff's Fourth Amendment rights. Accordingly, the court finds that summary judgment should be granted to the Wal-Mart Defendants and to the City of Maryville on plaintiffs' claim for civil conspiracy.

## C. State Law Claims

Plaintiffs have also asserted claims for assault and battery, outrageous conduct, and false imprisonment against the City of Maryville under Tennessee law.

Clear precedent from this court dictates that the City of Maryville is immune from suit for Plaintiffs' claims for false imprisonment, assault and battery, and outrageous conduct. As this court found in *Campbell v. Anderson County,* 695 F.Supp.2d 764, 777 (2010), Tenn. Code Ann. § 29-20-205(2) provides that immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent

14

act or omission of any employee within the scope of his employment except if the injury arises out of "civil rights." Here, Plaintiffs' tort claims of false imprisonment, assault and battery, and outrageous conduct brought against the City of Maryville under Tennessee law are predicated on the alleged violation of their civil rights by City police officers. Plaintiffs' allegations clearly arise out of and directly flow from the allegations that the officers violated Plaintiffs' civil rights. Because Plaintiffs assert claims against the City of Maryville in the context of a civil rights case, any alleged injuries arise out of "civil rights" and the City is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(e). Accordingly, summary judgment is granted to the City of Maryville on Plaintiffs' claims for false imprisonment, assault and battery, and outrageous conduct.

## V. Conclusion

In light of the foregoing discussion, Defendant City of Maryville's motion for summary judgment [R. 40] is **GRANTED;** the Wal-Mart Defendants' motion for summary judgment [R. 34] is **GRANTED**; and Plaintiffs' claims against these Defendants are **DISMISSED**, **with prejudice.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**

15